# Cortelyou's Appeal.

1. Specific performance will not be decreed of a contract for the sale of land, where the description of the land is vague, and the parties appear to have had a different understanding at the time of its execution as to the extent of the tract covered by the description.

2. Though a written agreement for the sale of land be unambiguous on its face, yet if a serious doubt arises upon the testimony whether the minds of the parties met understandingly as to the subject matter of the contract, specific performance will not be decreed.

March 9th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Northampton county :* In equity. Of July Term 1882, No. 169.

This was an appeal by Stephen O. Cortelyou, from a decree of said court, dismissing a bill in equity, filed by him against John Ott, praying for specific performance of a contract under seal for the sale of a tract of land.

The contract was in form of a lease from the defendant to the complainant, with an option of purchase, at a sum certain within a specified time. The only description of the land in the contract was as follows: " The property known as the Ferry property, including all that the said John Ott owns between the state road and low-water mark in the Delaware river." The complainant averred acceptance by him of the option to purchase and tender of the amount agreed upon, within the time specified ; a refusal by the defendant to convey in accordance with his covenant in the agreement ; and prayed a decree for specific performance.

The defendant, in his answer, admitted the execution of the contract as averred in the bill, and his willingness to perform the same, but averred that the complainant demanded a conveyance of certain land not intended to be included in the agreement.

The cause was referred to an Examiner and Master (J. C. Merrill, Esq.), who found the facts to be substantially as follows :

John Ott owned the lands marked A, B, in the following diagram.

The plaintiff claims that the description in the agreement includes both lots, A and B. The defendant denies that lot B is included in the agreement, and offers to convey lot A.

When Ott purchased the land, he at first contracted for the part marked A, and then, for an additional consideration, for the part marked B, and the whole was conveyed to him in one deed. The part marked B, and part of that marked A, was cripple, lying between the river bank and low-water mark, and was frequently overflowed. The strip B was not essential to, or used in connection with the ferry, its only use being to land rafts. The bridge was built after Ott's purchase, and before his agreement with the plaintiff. Ott testified that his understanding and intention was that the description in the agree-

6 Outerbridge—37

ment as above quoted, applied only to lot A.    The complainant testified that he understood the agreement to cover both lot A and lot B.

The Master reported, on the whole testimony, that there was a latent ambiguity in the description of the land agreed to be conveyed; that it was probable that Ott understood and intended the description should apply to lot A only; that, to say the least, the evidence gave rise to such a serious doubt whether the minds of the parties met and assented to the same thing in the same sense, that a court of equity would not, upon the allegation of one party, decree specific performance by the other. The Master therefore recommended a decree dismissing the bill.

Exceptions filed by the complainant to the Master's report were dismissed by the court, in the following opinion by SCHUYLER, J. :

" We think the learned Master clearly right in his conclusion that the bill in this case should be dismissed.    Aside from the reasons given by him, we do not see how it would be possible for the court in the present state of the pleadings to frame a decree that would be of the least benefit to the plaintiff.    The only decree possible would be that the defendant execute and deliver to the plaintiff a deed ' for the property known as the ferry property, including all that the said John Ott owns between the state road and low-water mark in the Delaware river.'    Now one of the main contentions before the Master was as to how much land is embraced within this description. If it was one of the purposes of the present proceeding to determine this question, then the bill should have set forth by courses and distances, or in some other way, the land in dispute, so as to clearly indicate the subject matter of the controversy.    In the absence of such a description, we are all at sea, and no decree that we could enter would put the plaintiff in a better condition appreciably than he is now.    He would still be confronted by the troublesome question as to the extent of ' the property known as the ferry property, including all that the said John Ott owns between the state road and low-water mark in the Delaware river.'    Such a decree as the plaintiff asks us to make would neither quiet his possession nor furnish him with a marketable title.    A chancellor is not easily moved to fruitless action.

" But there are more serious difficulties in the path of the plaintiff.    One of these springs from the doubt and uncertainty as to the meaning of the contract sought to be enforced, when we come to apply it to the subject matter.    If the land had been fully described in the contract by metes and bounds so as to thoroughly identify it, or if ' the property known as

the ferry property' had had its boundaries so well defined by reputation or otherwise, as to preclude all doubt on the subject the contract would not be open to the charge of ambiguity. Unfortunately for the plaintiff, and not without fault on his part, the land is not described by either metes and bounds, or courses and distances, and so far are the boundaries of 'the property known as the ferry property' from being well defined by reputation, that the evidence on that subject tends only to. increase the uncertainty.    The plaintiff is also unfortunate in his evidence of the possession taken by him under the contract. If he had shown unequivocal possession of all the land now claimed by him, taken and maintained openly and notoriously under the contract, evidence of such possession would have been very persuasive ; but even here he fails.

"But little importance is to be attached to the words, 'including all that the said John Ott owns between the state road and low water mark in the Delaware river.'    Low-water mark in the river Delaware and the state road, are long lines capable of including a vast amount of valuable property, both real and personal, which may have been owned by John Ott. Does the contract embrace all this property without regard to its character or proximity to the ferry property?    The language of the contract is broad enough to do so.    Or, does the contract embrace only the land in the immediate neighborhood and adjoining the ferry property.    If so, then should there be found upon this property buildings worth $10,000, or more, would the title to these buildings and to the land upon which they stood, pass by the contract?    We thus see that the language under consideration, standing alone, conveys no clear idea of the subject matter of the contract.    Turning from this language to the evidence we find ourselves plunged still deeper in the mazes of doubt and uncertainty.

"In addition to the uncertainty in the contract itself, there is evidence that the defendant did not intend to include that part of the land in dispute in the contract; that after he had signed the contract, in the absence of the plaintiff, he called the attention of the scrivener to the sweeping character of the description of the land leased and objected to it; that the scrivener said, 'if that lease ain't all right we'll make it right.' There is also evidence that the next day the defendant complained to the plaintiff that the lease was not right, and also that when the first quarter's rent was paid the defendant gave to the plaintiff a receipt in which the property was correctly described, which receipt the plaintiff failed to produce after notice.    It may be conceded that this evidence, taken in connection with the evidence adduced by the plaintiff, is not sufficient to produce absolute conviction in the minds of a

chancellor that the defendant did not intend to convey all the land claimed by the plaintiff, but it is sufficient to excite a very serious doubt on the subject; and this, as we understand the law, is all that the defendant is called upon to do.

" The burden is on the plaintiff, and continues with him to the end. He is asking for a decree for the specific execution of a contract. To entitle him to such a decree, he must show a contract wholly fair and equitable, and wholly free from ambiguity in all of its material parts. He must also show beyond any doubt that his mind and that of the defendant have been in accord all the way through the contract. These are elementary principles. A decree of specific performance is not of right, but of grace, and will never be granted unless the terms indicated above are fully complied with. The duties of the court in the preparation of this opinion have been very much lightened by the conscientious and very intelligent manner in which the Master has discussed both the law and the evidence. This assistance is the main purpose of reference to Masters and Auditors, and the report shows that the Master not only knew his duty but has done it.

" And now, June 12th 1882, the exceptions to the Master's report are overruled, and it is ordered and decreed that the bill be dismissed, and that the plaintiff pay the costs."

The complainant took this appeal, assigning for error the dismissal of his exceptions to the Master's report, and the decree dismissing his bill.

*G. V. Wallace* and *W. S. Kirkpatrick*, for the appellant. —Equity will not decree specific performance where the evidence shows that there was a mutual mistake of fact, material to the controversy, but here the mistake, if any, was by only one of the parties, and that in the teeth of the plain and unambiguous words of the written agreement. The allegation by one party that he misunderstood what is plainly written and on the faith of which the other party entered into the agreement, is no defense at law or in equity. Otherwise the door would be opened wide to fraud: Gibson *v.* Union Rolling Mill Co., 3 Watts 32 ; Cooper *v.* Ins. Co., 14 Wr. 299 ; May *v.* Dwight, 1 Norris 462 ; Bispham's Equity § 191 : Kerr on Fraud and Mistake 409–412.

*P. C. Evans* (*C. G. Beitel* with him), for the appellee.

The opinion of the court was delivered March 19th 1883.

PER CURIAM. The evidence of this alleged contract is too doubtful to justify a decree of specific performance. There certainly was evidence to sustain the facts found by the Master

and confirmed by the court, that the agreement was entered into under a misapprehension of the parties, in regard to the quantity of land intended to be included in the contract. The serious and substantial doubt found to exist, is sufficient to stay the hand of a chancellor, and to justify him in refusing a decree of specific performance, which is not of right, but of judicial grace.

Decree affirmed and appeal dismissed at the costs of the appellant.