## Lindsay v. Rose.

*Specific performance—Parol to vary writing—Statute of frauds—Costs.*

1. Under a lease of "a certain three-story store and dwelling, situated at No. 1344 North Tenth Street," containing a subsequent option clause giving the lessee the right to purchase "this property" for $8500, the words, "this property," refer to the premises demised, and parol evidence is inadmissible to change the description of the property covered by the option or to amplify it in any way.

2. Under the statute of frauds (Act of March 21, 1772, 1 Sm. Laws, 389), a written agreement cannot be reformed by a chancellor so as to conform to the alleged understanding of the parties based upon oral representations by the defendant, and, when thus reformed, be specifically enforced.

3. Hence, evidence that the lessor told the lessee at the execution of the lease that the option would entitle him to buy, not only the demised premises, but also a lot on the rear fronting on a back street, with a house erected thereon, which lot was occupied by another tenant, the two properties having a common yard between them, was held to be inadmissible.

4. When the chancellor finds that the defendant made oral statements in regard to the sale of the property inconsistent with his position after the bill for specific performance was filed by the vendee, and denies relief to the plaintiff, merely because of what the chancellor conceives to be the requirements of the statute of frauds, costs will be imposed upon the defendant.

Bill, answer, replication and proofs. C. P. No. 2, Phila. Co., Sept. T., 1923, No. 6089, in Equity.

*W. C. Waltman* and *D. M. Lowrey*, for plaintiff.

*Carr, Rose & Fischer*, for defendant.

STERN, J., April 22, 1924.—This is a bill in equity praying for specific performance of an option for the sale of real estate. On bill, answer, replication and proofs, the chancellor adopts as his findings of facts and conclusions of law the requests of the parties for such findings and conclusions, so far as they have been affirmed or qualified. They are sufficiently complete to make independent findings unnecessary.

In general, it appears that the defendant, Solomon Rose, was and is the owner of a lot of ground 15 feet in width by 100 feet in depth. The lot fronts on both Tenth Street and on Alder Street, which is a thoroughfare west of, and parallel to, Tenth Street. On the Tenth Street end is erected a three-story store and dwelling across the entire 15 feet width of the lot and extending about 61 or 62 feet in depth. This building is numbered 1344 North Tenth Street. On the Alder Street end of the lot is a three-story dwelling-house erected across the entire width of the lot and extending in depth about 21 or 22 feet. This building is numbered 1341 Alder Street. On the first floor of this latter building there is cut out a corridor or alleyway giving access to Alder Street, although the house contains an independent door and entrance to Alder Street. Between the two structures referred to there is an open areaway or yard enjoyed in common by the tenants of the two buildings, each of the structures being rented out to different tenants and under different leases.

The plaintiff, George W. Lindsay, offered to rent the front structure on Tenth Street, and the defendant said that he would rent it to Lindsay for $75 per month. Rose offered to sell to Lindsay for $8500, pointing out that he, Lindsay, would get both of the structures, and that if he bought, as distinguished from renting, he would have to buy the whole lot. This conversation and these negotiations took place on the premises. Nothing was then determined upon, but a few days later the parties met at Rose's office, and there Rose again advised Lindsay to buy the property, exhibiting to him the

rentals and carrying charges for the entire property. Lindsay said, however, that he would rent for two years at $75 per month. Finally, a written agreement was drawn and executed by the parties in the form of a lease, dated Oct. 6, 1921, wherein and whereby the defendant leased to the plaintiff "a certain three-story store and dwelling, situated at No. 1344 North Tenth Street, at $75 per month," and with a further clause as follows: "One hundred and fifty dollars was paid by the lessee at the signing of this agreement as a security to remain until the expiration of this lease or at the purchase of this property by lessee for the sum of Eight thousand five hundred dollars, option of which he has within the terms of this agreement."

The plaintiff went into possession of the store and dwelling on the Tenth Street end of the lot, occupying the store as a drug store. The building on the Alder Street side continued in the occupancy of other tenants, who held under leases from the defendant and paid rent to him.

A short time before the expiration of the lease, Lindsay signified to Rose his desire to exercise the option of purchase, and the parties met for settlement on Oct. 6, 1923. Settlement was not effected, however, because of a disagreement between the parties as to the subject-matter of the option. The plaintiff claimed that he was to obtain the entire lot with both structures thereon erected; the defendant contended that the option was only for the same part of the lot that was the subject-matter of the lease, namely, the three-story store and dwelling on the Tenth Street end of the property. The only controversy involved in the present proceedings in equity is on this point; the defendant refuses to convey the entire lot, and the plaintiff insists upon obtaining the entire property or nothing. There were incidental facts testified to and made the basis of some of the requests for findings, but the major facts are as herein set forth.

As to the general principle of law involved there can be no question; the difficulty in this, as in most cases, is in the application of the law to the facts. Where the description contained in an agreement of sale is indefinite and vague and does not clearly indicate a reference to a specific piece of property, parol testimony cannot be admitted to round out or complete the description, nor can specific performance be decreed. On the other hand, if the description is complete and designates a specific property, whether by metes and bounds, by name or number, or by any other method accomplishing the general result, parol evidence is admissible to apply the description to the property and to overcome any "latent" ambiguities which may be disclosed upon the attempt to fit the description to the physical property itself.

As the chancellor views the present case, the first duty which devolves upon him is to consider the written agreement and determine what the description is. Like every other writing, the lease and option agreement must be construed by the court. Before any parol evidence can be admitted or any claim made that there is a latent ambiguity, there must first be an interpretation of the writing by the chancellor construing the description which covers the subject-matter of the demise and option.

Examining the agreement with this in mind, we find that it consists of a lease of "a certain three-story store and dwelling, situated at No. 1344 North Tenth Street, Philadelphia, Pennsylvania." There is no controversy between the parties as to the meaning of this description. It relates clearly to the structure on the Tenth Street side of the lot, known as No. 1344 North Tenth Street. The plaintiff admits that this is all that he leased under the agreement, and the parties acted on that understanding, in that during the two years of the lease the structure No. 1341 Alder Street continued to be rented

out to other tenants and the rent therefrom received by the defendant.  With the subject of the lease, therefore, thus clearly defined, we come to the subsequent option clause of the agreement, which provides for "the purchase of this property, . . . option of which he has within the term of this agreement."  What is meant by the purchase of "this property?"  In itself it is clearly an inadequate description under the statute of frauds, since it contains no description whatever.  It is merely an arrow-head pointing to a prior part of the agreement and can refer only to the property described in the demise, namely, "a certain three-story store and dwelling, situated at No. 1344 North Tenth Street, Philadelphia, Pennsylvania."  It refers either to this description or to nothing; at least, to nothing that can be made the subject of specific performance under the terms of the statute of frauds.

The result is that the chancellor is bound to conclude that the only description upon which the plaintiff can rely, under the statute of frauds, is the description as given in the demise, and, as above stated, that description admittedly includes only the structure on the Tenth Street end of the lot.  From this reasoning it would follow, as a matter merely of the construction of the written instrument, that the subject-matters of the option and of the demise are identical, and that no parol evidence can be admitted to change the description of the property covered by the option or to amplify it in any manner.  This leaves no ambiguities to explain; the description is definite and its application to the land is definite.  What the defendant is attempting to do is to offer parol testimony to show that by "this property" is meant something more than the description as given in the demise, but it appears to the chancellor, for the reasons already stated, that this is an attempt to alter the description by parol evidence rather than by such evidence to apply a specific description to the land thereby designated.

It may be argued that this view of the case results in a moral wrong, since the effect of the chancellor's findings is to indicate that the defendant, in urging the plaintiff to buy rather than lease the property, stated to him in effect that the entire property was to be the subject of the purchase.  Even, however, if this be so, it would be merely another instance in which the statute of frauds works a hardship and injustice, as it admittedly at times does; on the other hand, it has, in general, proved to be of beneficent effect in the vast majority of cases to which it is applicable.

Of course, were it not for the statute of frauds, the plaintiff might have the agreement reformed by a chancellor so as to conform with the alleged understanding of the parties and the oral representations of the defendant.  Under the statute of frauds, however, an agreement cannot thus be reformed and then specifically enforced.  This was distinctly ruled in Levy's Estate, 273 Pa. 148, where there was an alleged oral agreement that the description of the property was to include one-half of an adjoining alley, but where the court said that this alleged oral agreement "could not, if established, be specifically performed."  And so, in The Safe Deposit and Trust Co. of Pittsburgh v. Diamond Coal and Coke Co., 234 Pa. 100, the court said: "The vendee corporation, recognizing the invalidity of the agreement as written and its inability to enforce specific performance of it, seeks by its cross-bill to reform the contract by parol and then to have the contract, as thus rectified, specifically carried out by the vendor. . . . While . . . the admissibility of parol evidence, under proper limitations, to alter, vary and even to contradict a written instrument in such cases is settled in this State, it has not yet been determined by this court that the instrument having been varied or rectified by the evidence, the court may decree specific performance of the agreement

in its varied or corrected form, where the contract is required by statute to be in writing. It is one thing to alter or vary a written contract by parol evidence and quite another to specifically enforce it in its varied or altered form. . . . We are clear that upon reason and authority a court of equity cannot vary or rectify by parol an executory agreement in writing for the sale of lands, and as thus varied, in the absence of an estoppel, specifically enforce performance of it. . . . When, therefore, a party to an executory agreement in writing for the sale of lands succeeds in reforming it by oral testimony, he reduces the whole agreement to a parol contract and deprives himself of the right to have it specifically performed. He pulls down the house on his own head. When he converts the writing into an oral agreement, the statute declares it to 'be void.' He has rectified the written contract and in its place has established an agreement which in contemplation of law is parol and, therefore, by a statutory mandate, absolutely invalid and without force. The true contract, as declared by the chancellor, cannot be enforced. . . . Whether a written contract is reformed on the ground of fraud, accident or mistake, the effect is the same; the whole contract is, in contemplation of law, reduced to a parol agreement, which the statute of frauds declares to be void and incapable of being specifically enforced so as to compel the transfer of title to real estate. The statute is not a mere rule of evidence, but a limitation of judicial authority to afford a remedy."

It will thus appear that, even though, as the chancellor has found, the defendant gave oral assurances to the plaintiff as to what he would get if he would buy the property, and even if his present conduct in repudiating such assurances amounts to fraud, the court can construe the agreement only as written, and, as so construed, the chancellor, as above pointed out, reaches the conclusion that the writing calls for no more than the sale of the specific property demised.

It is contended by the plaintiff that the words "this property" in the agreement may and should be construed to refer to the property "No. 1344 North Tenth Street," and that parol evidence being admitted to apply that description to the land, the chancellor should find as a fact that such description covers the entire property, including the Alder Street structure. It is not believed that the words "this property" can be so construed, but even if the suggestion on this point be adopted, the chancellor is not prepared to say that, under the evidence and apart from the alleged oral representations of the defendant, the description No. 1344 North Tenth Street would include the entire lot, any more than that the description No. 1341 Alder Street would include the entire lot. There are two distinct structures, each fronting on a separate street and each separately numbered, with a common yard between, and while the Tenth Street structure is the more important, and Tenth Street is a main street as compared with Alder Street, nevertheless, there would seem to be no justification for holding that the one number carries both structures and the intervening yard.

Finally, it may be pointed out that the plaintiff's interpretation of the amount of property to be conveyed is, at best, far from being undoubtedly the correct one. Even the plaintiff must admit that there is, at least, considerable ambiguity and doubt. Under such circumstances, the cases hold that specific performance should not be granted: Cortelyou's Appeal, 102 Pa. 576; Reilly v. Gautschi, 174 Pa. 80; O'Connell v. Cease, 267 Pa. 288. In the last-mentioned case the court said: "Equity will not decree the specific performance of a contract unless its terms are clear and capable of ascertainment from the instrument itself: Hammer v. McEldowney, 46 Pa. 334:

Reilly v. Gautschi, 174 Pa. 80; nor will it decree such performance where the agreement is so ambiguous and contradictory in its terms as to make its meaning indefinite and uncertain: Merrill's Appeal, 16 W. N. C. 346; nor unless the writing contains an identification of the property: Weisenberger et al. v. Huebner, 264 Pa. 316; Mellon v. Davison, 123 Pa. 298. The essential basis of a decree for specific performance of a contract to convey real property is a definite present agreement in regard to a specific piece of land, clearly designated as present to the minds of both parties and to be conveyed by one to the other: Brown v. Hughes, 244 Pa. 397; Baldridge v. George, 216 Pa. 231; Agnew v. Southern Avenue Land Co., 204 Pa. 192. It is not the function of a court of equity to make a contract for the parties nor to supply any material stipulation thereof: Albright v. Albright, 228 Pa. 552; Zimmerman v. Rhoads, 226 Pa. 174."

Since the chancellor has found that the defendant made oral statements in regard to the sale of the property inconsistent with his present position, and since relief is being denied to the plaintiff merely because of what the chancellor conceives to be the requirements of the statute of frauds, it is believed that the costs in this case should be imposed upon the defendant.

## Decree.

And now, to wit, April 22, 1924, this cause having come on to be heard upon bill, answer, replication and proofs, it is ordered, adjudged and decreed:

1. That the bill be dismissed.

2. That the defendant pay the costs of these proceedings.

The prothonotary will enter this decree *nisi* and give notice of the same to the parties or their counsel, and if no exceptions are filed within ten days thereafter, either party may present to the court a form of final decree then to be entered.